Good morning. Good morning everyone. Mr. Chief Judge, I'm pleased to call your elected reserve three minutes before the fine. I'm here today representing Pastor Daryl Holmes and his wife Kathleen and five other families that are homeschooled in Pennsylvania. The school districts in this case went for some judgment only on one ground, and that sole ground was whether or not the families had demonstrated that they had a substantial burden on their free exercise in religion as a result of the application of Act 169 to them. Some of the contentions and submissions before the court, Amicus Priest for example, argued compelling interest, least restrictive means, which are issues we very much like to get to, but the sole motion before the court below was, is there a burden? And so all those submissions are submitted beside the board. And the district court did not address that particular. That's correct. The district court seems to think that the only time a religious claimant can show a burden, if there's a discriminatory application of a statute on a religious, basically religious discrimination, whereas that's never been the method of determining a burden in any of the relevant cases either before Smith, after Smith, or at the founding of this republic. Before you get to Smith, don't you have to deal with, or might you not want to deal with the Pennsylvania Religious Freedom Protection Act? That would be fine, Your Honor. In fact, we of course have asked this court and the school districts have agreed that it might be appropriate to submit the matter to the Supreme Court of Pennsylvania for its first census. We initially filed these cases in the state court, and then to the school districts, which perplexed us as to why it stays to federal court. But we ended up in federal court and consolidated a bunch of cases together. But we think it would be appropriate to first submit to the Supreme Court of Pennsylvania to determine whether or not the statute's been read correctly. And moreover, if we're going to get to the substance of the statute, the statute's quite clear. There are four definitions of substantial burden. And it's important to note that the definition is of substantial burden, substantially burden. It's not a definition of burden. And so the district court conflated the four definitions into one and basically said, these people aren't being limited on performing religious sacramental ceremony that I can see. And that just simply isn't the claim that has ever been made. The claim that's been made... You're under the fourth definition. That's right. Compels conduct. That's right. Our claim is that it's compelled conduct. Not expression. Compelled conduct or expression is a combination of both things because they're required to submit a package of written material, so that would be expression. But they're compelled to submit the jurisdiction of their family's home school to the discretionary review of the government superintendent. Now that's the key. People on the other side try to pretend that the families are contending that there is never ability of the government to assert its compelling interest in literacy and self-sufficiency, which is recognized in the other. And that's simply not the case. Why is that? We have objected, the parents have objected, to this particular statute. And the objectionable are not the record-keepings per se, not the testing per se, not the getting of the evaluation from the third party person. But they have to take all that material and hand it over to the school superintendent and say, now you make an independent judgment. You review it and you decide whether we should be allowed to proceed. But without, as I understand it, without reference to any of the religious content. That is, tell me if I'm wrong, the state is forbidden to evaluate the religious content or to make any judgment about it and either to prescribe it or to change it or to make any suggestions. Am I right about that? Well, you're right about that, but that's not the sole issue. The issue is whether he has discretion at all. It's not that he's abusing his discretion by religious discrimination. Does he have any discretion to do anything with respect, does the state have any discretion to say anything about religious content, even religious content of non-religious, what we might say are typically non-religious subjects. That is, if they're taught in a way that's grounded in a particular religious view. Well, you're right. The Supreme Court has often, as religion clauses jurisprudence, has said there's a play between the joints and there's an interaction of lessons that can be learned from establishment clause cases and pre-exercise applications and vice versa. And what you're suggesting is that the government can do a discretionary review of a whole religious curriculum and sort through it and only not look at the religious parts really, but instead will look at just the secular parts of the instruction. Whereas in the establishment clause, in Women vs. Kurtzman, for example, the Supreme Court has said that very act of the secular agency trying to sort through and figure out what's secular, what's religious, what's appropriate, what's not, is simply not appropriate because it involves excessive entanglement. In our site, the whole wording of First Amendment cases that we rely on say it's the presence of discretion. In Kendall vs. Connecticut, as Justice Frankfurter later explained in SAIA, it's the presence of discretion. If it's ministerial in character, you can do it. If there's discretionary review of the right to conduct First Amendment activity, that in and of itself is a violation of First Amendment. You cannot put discretion in the hands of the government and say whether or not they can have a union utility. You're focused on the substantial burden piece here, right? Correct. Isn't that really under the starting of the state law? Under the RFPA? Yeah. Yeah, but we believe that the RFPA's definition of burden tracks this current federal constitutional definition of burden as well. Even in the Smith decision, it's very clear that the standard definition is, are you compelled to do something that your religion forbids, or are you prohibited from doing something that your religion forbids? I think Smith is a lot more nuanced than that, but the problem we'll have is we keep going back and forth between the same thing. I'll stick with the state. I don't know if I'm tracking you correctly. Was there a finding made on substantial burdens under the fourth part of that definition that compels, as the Chief Justice already said, conduct or expression which violates a specific standard versus religion? No. That analysis was never found in the district court record. The district court simply didn't understand its duty there. Was it not? It had its own definition of substantial burden, which is just simply not connected whatsoever to the language of the RFPA under Pennsylvania law. Basically, view this as if we're not telling you you can't home school, there's no burden. It couldn't get past that basic point. Before we leave the RFPA, if you were to go bail under the RFPA, what would be the consequences of that? I mean, wouldn't that kind of go up the floodgates, as somebody said in the prior argument, to people taking their children out of school? Well, Your Honor, it would operate very much like the Virginia Religious Exemption Statute. I mean, in fact, it would depend upon what the court would ultimately hold was the objectionable component of it. If it left in place all the objective criteria that are in Act 169, keep the law, have an independent evaluator, take the tests, just the management subjects, but don't turn it over to the person for discretionary review. If you have done all these things, and there's an objective review to make sure that you've done these things, just a ministerial review of that, that might be determined to be the least restrictive means meeting Pennsylvania's requirements. And that would be probably something close to that's what left in place, and that's what other state statutes look like. I guess from the state's perspective, they're saying, look, we have an obligation to make sure that the children learn. You can do it at home, especially whether it be for religious purposes or not. But we need to know that, to some extent, you're succeeding in doing the types of things that we want educational children to do. And we welcome such analysis. That's, of course, a least restrictive means analysis. And seeing, are the parents capable of meeting the state's interests in a less restrictive, is there a less restrictive alternative that will meet the state's interests in literacy and self-sufficiency that wouldn't require these people to violate their religious consciences? And I think this clearly is. I mean, the law in virtually at least 48 other states is entirely objective. It will boil down to this if we get to the compelling interest, least restrictive means analysis done correctly. And that will be, does Pennsylvania have a compelling interest in requiring discretionary review as opposed to objective review? And we think that Pennsylvania can satisfy its compelling interest in objective review because it does so in every other form of private education, including private tutors. A person who is a certified teacher in Pennsylvania can teach as a private tutor and have absolutely no subjective review of what's going on there. The private religious schools, there's no subjective review. Does the tutor, is tutoring a substitution for education? In other words, tutors don't purport to certify somebody for graduation or education, do they? On the contrary, the private tutor exemption is another form of compulsory attendance. So if a person, it means you didn't teach somebody else's child, basically homeschool someone else's child to become a tutor. So when you say tutoring, you're not talking about somebody getting an adjunct to their I'm having trouble understanding the difference between your distinction between objective standards and discretionary standards. Tell me how it would work specifically in this case as to what the Department of Education would be reviewing. Well, the Department of Education would be different, but it's the local school district. What is done today is, compared to other states, in most states, if you are required to take a test that says a standardized score, if you achieve the 23rd percentile in New York, for example, or the 40th percentile in Virginia, there's a checkbox and the state says you are satisfied that your education is okay. Or other states require them to do what Pennsylvania does, have this independent certified teacher review the portfolio and say we're satisfied that there's adequate education going on. And basically, the test score or the portfolio reviewed by the independent teacher, there's a box check, someone has looked at this and we're determined. Instead of doing it that way, Pennsylvania has this additional set of saying we're going to have a discretionary review. And whether it's statutorily or whether we get ultimately in the federal constitutional analysis, we can't get around the fact that religious liberty is absolutely inconsistent with government discretion in any phase of the application process, including this court's decision in Black Rod. Tell me what constitutes discretionary review in the Pennsylvania system. The school superintendent is not bound by the test score. The school superintendent is not bound by the law. The school superintendent is not bound by the third party independent certified teacher review. Even after getting all that, this mountain of paperwork, he can look it over and say I don't think the education is adequate. And whether or not he reveals... But have we got that far yet? I don't understand the question. In other words, we're trying to separate between discretionary and objective. Right. I'm sorry. Okay, go ahead. I'm describing current law and I've switched over to current law. An objective review, he could not make an independent determination. He could say, okay, you've done the number of days and hours, you've done the required subjects, that's objective in character.  You've had this independent party review it, that's objective in character. All of that's objective. It's the additional stuff that Pennsylvania does that virtually no other state does. It says you take all this objective material and the school superintendent can ignore it all and still make his own independent judgment. It's a facial challenge. You're not dealing with... The point you just made is regardless of whether they ever did anything bad with that discretion or not, the existence of it all by itself is so invasive it constitutes a substantial burden. Have I understood you? The existence of official discretion in the exercise of fundamental freedoms demands strict scrutiny. That's the holding of this court and the Supreme Court of the United States. Yes, Your Honor. And as I understand it, you're not claiming that they've done that in your case. No, we're not in your claims. We stand on the historic line of cases that said one may have a government license for the asking. They refused to get it on the matter of religious conscience and challenged the whole licensing scheme. This is a licensing scheme. This is a prior restraint. This is exactly why James Madison stood at the convention on the Bill of Rights and said religious toleration is not enough because the whole system of religious toleration in William and Mary in 1688 was you've got to go to the government to get a license to preach. And we're going to give it to you. But you've got to satisfy us that you're okay. And the presence of discretion led Madison to say no, we will not accept religious toleration as proposed by George Mason, but instead we want religious liberty. And the difference between toleration and liberty is the presence of government discretion to say no. D.K. Jordan, a great Harvard historian, said toleration is not a wider form of liberty. It is the counterfeit of liberty. And to allow the Pennsylvania school superintendents to exercise a counterfeit of liberty in the name of being compliant with religious liberty is a misnomer and absolutely antithetical to our history. From 1787 up to 1990 in the Smith case. Yes. How do you interpret the Smith case and how does it help you? The Smith case interprets the Yoder decision. It mentions Yoder in passing. It says that the rule that was announced in Smith, that patiently through laws of general applicability you can't get a religious exemption from them, generally speaking. But they say there's some exceptions to that rule. And this court in Blackhawk has interpreted it just the way we interpreted it. And has said they read Yoder to still be good law. That's critical. Yoder was not reversed. And if Yoder is still good law, whatever the rules of Yoder were, whatever it is, maybe we're not going to expand on the hybrid theory in new kinds of cases. But at least Yoder is still valid law. And that burning of the religious education and right of parents. And Yoder was held what? Yoder held that when there's a burden on the right of parents to direct the religious upbringing of their children, that the government must show a compelling interest. The strict scrutiny standard applies. That that's a burden. When the government says, you must educate children our way and the parents say, no, we want to educate children differently. You get strict scrutiny. And that's all that we have to get to in this case, at this stage, is you get to strict scrutiny under Yoder. The Supreme Court in Michigan held the exact same thing in a case exactly like this. There's no allegation here that a ruling in favor of the school districts would destroy the story of the way of life. There are no cases ever to connect that with the story of the way of life that's been in existence for 300 plus years. If we're going to adopt an interpretation of religion clause that only protects people who have religion for 300 years, wouldn't it violate the very essence? In fact, that very theory itself violates the establishment clause. That's such a good argument. But Yoder was grounded in the record. More than once, they referred to the term record and also to the facts. I'm sorry to put on 10 more minutes. Well, I'm concerned a little bit about bootstrapping here. You say that this discretion puts the school district into the business of religion, but isn't that because of your characterization? How is it that they are in the business of religion because there's some residual discretion left for reviewing educational sufficiency? There's nothing that says we're going to be reviewing religion or we're interested in your religion or anything else. There's some residual discretion left to talk about educational sufficiency. How do you get to the point of saying that's discretion that invades religion? Your Honor, I don't have to prove that it's discretion that invades religion. It's the wrong standard. The correct standard is discretion applied to any first amendment activity. If we're going to have a preview of the press and we're going to say, well, we're going to review the press to see if it's safe and acceptable. No, we're not going to allow that. We do not allow for government to have discretion about what you print, whether it's religious whether it's because you're a Democrat and I'm a Republican or you're a Baptist and I'm a Catholic. It doesn't matter what the reason is. The government is not ever allowed to apply discretion to the right to conduct first amendment activity. Going back to Judge Shrink's question a moment ago about your view of the facts, we've cited about a dozen cases where your has been successful in price, successful religious liberty advocates that are Lutherans, that are Methodists, that are all kinds of people, including the people that I represented in the Supreme Court of Michigan in the Dion case. And it is not limited to just the Amish. Fred and Thomas versus Review Board and other Supreme Court cases that it is not tied to denominational. Individual religious freedom in this country is an individual right, not a denominational right. And it is incredibly important that we not restrict it to such denominational or historical kinds of things, only if your religion is 400 years old. Where would the LDS church be then? Would they have any religious freedom left? Where would the Jehovah's Witnesses or any other denomination that has risen more recently than 400 years ago? I'm a Baptist, but technically the Baptists are 400 year anniversary about five years ago. And so if we're going to have that definition, we need to limit our religious freedom in a way that is absolutely untenable in this republic. Let's fast forward to the Smith case again, because I think that was a fruitful area of inquiry. And explain to me, because I'm still not sure I've got it, do you think Smith just doesn't really speak to this issue at all because Yoder's the BLNO? Because if that's your position, that's fine. Say it. If Smith does have something to say that's meaningful about this, explain to us how neutral and generally applicable impacts your case. Okay. Well, your district court in Blackhawk said that whenever there's a presence of official discretion to grant or deny exemptions, that it is not a neutral law of generalizability right off the bat. So am I taking it that the answer to my specific question is you do say Smith does have something to say? Oh, of course. You cannot argue religious liberty cases in this country anymore and not talk about Smith. Okay. It is the pinnacle of religious liberty litigation. And so it's what does it say is the question. Right. And so this court has said, post-Smith in Blackhawk, that whenever there's the presence of official discretion, that that in and of itself takes the law out of the category of being a law of general law neutral applicability and being a law where strict scrutiny is applied. Where you find official discretion is no longer a general law that applies to everybody because he can say yes and he can say no. And that's exactly the kind of law we have here. Secondly, under Smith, they do announce the high risk area. We know that the Second Circuit and the Seventh Circuit don't think so. But this court seems to think so in Blackhawk and other cases. So you're making them the Seventh. The Seventh. I understand. The Seventh, the Sixth, and the D.C. Circuit don't. They thought it was DICTA. Right. And as this court said in Blackhawk. Technically. DICTA is when you're commenting on some new rule of law that is not part of it. They're explaining how these rules are still valid. Because basically you're going back to the cases, trying to make some sense of what cases still stay and what cases aren't any good anymore. Because frankly, Smith takes what I find to be a preposterous position. That they want you to hear the rules. And when they claim not to be changing the rules. Or that they were confining Sherbert to its facts. And I don't think that you can. They don't say it that way. They say, well, there's a combination of two rights. And maybe we shouldn't be. Maybe your court shouldn't be saying, well, you take column A and column B like a Chinese meal. You blend them together to have a fundamental right. But the rules that they specifically identify. This court is critical of the United States. It doesn't decide cases just for that person. They're making decisions that are going to be followed by other courts. And be guided by other courts. And our listing of all the cases that have followed the other, applying it to all kinds of people, is simply to say it's worded to its facts. No other court would do that at the end of the day. And we would suggest that we prepare them to do so. In this case, it only takes one court in one day to do it because it's the Supreme Court. Well, that's true. If they reverse Yoder, then of course we're dead. No, they're not saying they reverse Yoder. One could make an argument they're combining Yoder to its facts. I don't think that's what they're doing. I assume that where you're arguing is that the hybrid theory, that is you have to take three exercises and combine them with something else, you would prefer that we go along with the second, the sixth, and the D.C. surfaces and just say that was dictum? I would prefer that you follow the hybrid theory. Because? Because that's what I would submit to authorize the hybrid theory. And to sanction it. I do too. How does that help you? Well, under the hybrid theory, when we have a blending of criminal rights and religious freedom, we get strict scrutiny. And then when we're in the case, it's just that we get strict scrutiny and we have to go back and have a trial to compel an interest in this restrictive case. And so strict scrutiny is not automatic victor for the religious claimant because there may be issues. So there is a compelling evidence of religious issues of arbitration. Assume that it worked out just the way that you would like, Mr. Ferris, and it went back to the district court. You say it would go back for a trial. Is there a record here already for summary judgment on compelling state interest? No, there's not, Your Honor. We weren't allowed to do the kind of discovery and file the kind of opinions that would be necessary. There would be a requirement of exchange of experts and a whole lot more to get to compelling interest, to determine what kind of regulation of homeschooling is necessary to achieve which we can see up front. The government has a compelling interest in literacy and self-sufficiency, but the record was truncated in court. Let's develop it. Am I correct that you have a different view of the discretionary nature of the decisions that are made by the school board from the school board here? It seems to me that they're saying Pennsylvania law provides for compulsory education in one form or another. No, there are four exceptions, and then homeschooling is certainly one of them. But within that, there is still a requirement that you have to put in a certain amount of time and certain subjects have to be told, and so therefore they're saying there are discretionary exceptions here. I gather your discretionary argument goes to what the individual school district may decide to do in applying and looking at the application or looking at the portfolio. Am I correct? I don't think so, Your Honor. The school districts, you know, they do a cloud of dust and smoke and mirrors and argue about the importance of public education, which is absolutely an irrelevancy, and they argue that a public school must regulate private education. Again, an irrelevancy. We have not contested that. We're contesting this statute, which requires official discretion. They don't deny there's official discretion. They minimize it. They don't really talk about it much. They entirely ignore the entire line of cases that we cited about the presence of official discretion. That's telling. Why do they not even discuss Gorman v. Downey Valley? Why don't they even discuss Campbell v. Connecticut? The answer is they're afraid of it. They recognize, at least they should recognize, that the presence of official discretion is a constitutional trigger in the first amendment context, and so their only hope, frankly, is to reverse order and have Smith trump the situation because if we get to real first amendment analysis, we land the burden test. There is no doubt about it because burden is about compulsion, and these things are compelled by the principle of the law to run it under seizure or discretionary review those things that should be running under the gun. Let me stop you because that's a key point, and it's nice to catch the biblical terms, but undoubtedly we'll be hearing from the other side that, look, they don't want you rendering anything to them that's to be rendered to God. They're not interested in your view of God or no God. It's just not anything that they have any interest in whatsoever. If they're interested in one thing and one thing only are the kids getting education that they're entitled to by law are supposed to get in the Commonwealth of Pennsylvania. That's undoubtedly what we'll hear from them because it's all over in their briefs. So when you say any discretion is a trigger because it starts invading and causing a substantial burden on religion, I guess I'm having a little bit of trouble following the line that goes from any discretion to substantial burden. If I understand you in your briefing right, you're saying that it doesn't make any difference what the discretion is geared to. It doesn't make any difference that this is an educational statute, it's about education, and that that's the discretion is are they getting an adequate education. Because you have religious motivations, you, I mean your clients, in the context of education that motivation that your clients bring converts that discretion into a burden on their religion. That's the line of argument I'm hearing. Have I understood it correctly? Most greatly, your honor. The Black Hawk case gives us an interesting analogy. What was the purpose of Pennsylvania saying you can't keep bears in cages? It was for safety and preventing cruelty to animals and those kinds of things. They weren't against Indians keeping bears in cages. That didn't cross their mind. That was safety for bears. That's what it was about. A person comes along with a credible history of having these bears for religious reasons, and this court said you've got to pay attention to that. You've got to pay attention to their religious objective. They will indeed talk about the importance of public education, and they'll talk about the generalized interest in regulating homeschooling. We're not contesting that. We're not contesting that there is indeed a generalized interest for all kids in literacy and self-sufficiency. We're talking about a particular law, and that's always the proper subject of constitutional litigation. Is this particular law in violation of the principles? Can we have a new law that's slightly different and we say these people won't obey it? We don't know if they'll obey it or not. The Higgins family that's in the record obeyed the Florida law and we have no problem with it. The argument that these families won't accept any regulations is just contrary to the evidence that is in the record, and unless we ask these people where is the particular trigger here? Is it the testing? Is it the review by the certified teacher? If we can find a least restrictive alternative, but we can't get to those kinds of discussions about the adequacy of education for children unless we get to compound interest in least restrictive means analysis. Thank you very much, Mr. Parrish. So I'll hand you back over to Mr. Lally. We'll give you additional time as well. Thank you. Good morning. My name is Paul Lally and I'm here on behalf of all the school district appellees in this matter. The first thing I'd like to address is this concept of discretionary review that Mr. Parrish was asserting. That's certainly not how the school district's Department of Education interprets what Act 169 actually provides, and it's a review by the superintendent of portfolio materials on the law of the independent evaluator's report to determine specifically if the statute requires that there's actually an education taking place and that there's progress being made in the mandated subjects. Again, progress is specifically defined in the statute and it's a reference to the subjects that are required by law. Let me ask you. Yes, sir. That, I take it, is the point that Mr. Parrish is making, that at that point you've emerged from a strictly objective measure into the realm of a subjective determination of whether there's been, quote, education, unquote, or not, and that having moved from that realm of the purely objective into the realm of the subjective is, in and of itself, the trigger for this heightened standard of review. Now, I might have misunderstood him, I might have misunderstood the priest, but that's how I understand their argument to be running. Can you answer that specific argument? Are they wrong, theoretically, about that on the law? I think that they are. And here's what I understood Mr. Parrish to be saying, and he can correct me if I'm wrong, that there are instances where, even under the Pennsylvania statute, you have nationally non-standardized tests that the children are required to take. And that way you have, and of course there's a graded on a scale, or evaluated on a scale, typically in that kind of testing situation, and that's only required under the homeschool statute in specific grades. I believe third, eighth, and eleventh, but I could be incorrect about that. But the portfolio materials themselves can constitute a variety of different matters. It could be an essay that a student wrote, it could be a test that's given. What the superintendent is really doing is looking at it and saying, does the test actually show that the student got 80% of the questions right, or something along those lines. The independent evaluator is someone who has already actually performed that function, and that person's input is something that the superintendent is supposed to review also. But the fundamental review that's being done is to determine, is it flat on the fact that students show demonstrating progress in the core academic subjects that are required under the law. And so I don't think that there's discretion in the sense that if the superintendent is free to disregard what the actual materials contain and make it independent and so wholly separate from the materials determination of whether the fact that children are showing progress, educational progress. Under the statute, can the superintendent disagree with the independent evaluator? I'm looking at the record. I know that the test scores are X, Y, and Z, and the evaluator says this, but I don't like this education. Well, the superintendent is not bound by what the independent evaluator determines is done. Then tell me how that is not discretion of the type Mr. Ferris is complaining about, because that's what I understood when you got up was going to be your point, that it's really not the kind of discretion he's saying, and I'm not following you. Because the superintendent can say, you know, I see the test scores, I see what the evaluator says, and I still don't like it. If that were to happen, the statute itself actually provides for a level of appeal above the superintendent, and what the parents have the right to do is How does that change that from being a discretionary decision? Well, I guess I disagree that the superintendent's duties are spelled out in the statute itself as to what he or she is supposed to consider in looking at these materials. The independent evaluator is not somebody who's picked by the school district, it's somebody who's actually picked by the parents as part of their case of showing to the superintendent that in fact the children have made progress in required subjects. It's not somebody who's picked by the school district, just to be clear about that. And I think if you're talking as they are about a system of discretionary review, I don't think it's appropriate as they've been doing to focus only on what happens at the superintendent level, because in fact Act 169 provides for a mechanism and a due process procedure to go outside of the school district and outside of the Department of Education to have an independent hearing law examiner evaluate whether the superintendent, in fact, correctly or incorrectly determined that progress wasn't being made by the children in those required subjects. So what I hear you saying is you really can't take some level of subjectivity out of it by the very nature of the review, whether it's at the independent evaluator stage or at the district supervisor stage, superintendent stage, or at the appellate stage. Somebody looking at this is going to have to exercise some discretion, because it's not all numbers and test scores and stuff like that. I think that's fair comment, and you have it all right. If that's true, what's the response to the assertion that that's still discretion, we're still entitled to a strict scrutiny review of this? Because I don't think you can simply take out that minimal component. First of all, I'd say I still think that all of the functions that the superintendent performs under the statute are measured by statutorily defined criteria, and to the extent that subjectivity is inherent in any educational process, I mean, how do you take subjectivity out of a grading essay? You can't do it inherently. It's built into the process even in the traditional school setting. What the superintendent has to do is not something that he or she just develops their own criteria for whether or not the program has satisfied the goals. I mean, the statute has a specific definition about that, and whatever determination the superintendent actually makes, again, you have to take, I think, the entire process out of the statute and say, the parents and families have a right to challenge whatever determination is made by the superintendent. They have the right to do it as somebody who's not an employee of the school district or not even an employee of the Department of Education. So I think when you take that comprehensive scheme and do it that way, I think it's an objective one, and I don't concede that there's really any discretionary aspect to it. Well, you're arguing two different things. One, you're saying it's objective, and then your earlier response was that the whole system is subjective to some degree, whether it's in the nature of the kinds of tests that are required and the value of the independent evaluator and the way the test has been administered, all that kind of stuff. It's hard to have an objective, completely objective standard in this matter. So is it both? Well, again, I think you can have objective criteria. I'll go back to my English essay for how you determine whether an essay is an A or a B, but whether or not an essay actually gets the A or the B is going to inherently involve some degree of exercise of, I guess, experience, and I hesitate to use the word discretion. This is your argument. It's even simpler than that. You don't have to worry about the A or the B. All you have to worry about is making sure it's not an F. As far as what's happening here, yes, because you're only doing a very baseline review, so the tenet is to make sure that there's a minimum that's being done and that some progress is being made. I hesitate to speak for Mr. Ferris. He's done a fine job, but let me try to summarize what I heard him say to get you to respond to this. It is, I take it, their argument, not that ultimately the state doesn't have an interest and that you can do the sorts of things that involve the state in assuring themselves of an education, but that they weren't given the chance to put the state to the burden of proving that they had done it in the least restrictive way and pursuant to a compelling state interest because the court said there's just no substantial burden on religion here at all. That's the point of distinction that I don't want to get lost on. I understand your briefing and some of your arguments so far moving toward, hey, we need to do this. It has to be done. Somebody's got to look at this. There's an interest in doing that. But I take their argument not to be going to that, but that's conceded that there is an interest there. I take their argument to be that this statute on its face vests the superintendent with the capacity to make a sort of subjective review and that that all by itself constitutes legally a substantial burden on religion. That does it. That meets that test and puts you into the range where they should have been entitled to have some record developed in the decision about compelling state interest. Now, maybe I've misunderstood him, but I thought I was following the argument that way. Do you understand his argument differently? Well, something that to me has always not been clear in this case is precisely the nature of the religious burden that the plaintiffs are claiming in this case. And I think that the answer to that question will go along the lines of answering what you're asking now, and that is to the way that at least it came out in the deposition testimony of the case. I only represented the district court, but one of the school districts, which is the Fred Samuel School District, and the family in that case, the Hankins. I wanted to find out precisely what is it about complying with Act 169, about the homeschool statute, that burdens their religion, and how does it burden their religious beliefs? And I went through the whole list of the statute's actual requirements with them. There's nothing inherent in what the statute requires. Let's say, for instance, the fact that you keep a log, or that you compile materials, or even that you teach certain mandated subjects like geography and chemistry, things like that. Nothing in that inherently violates their religious beliefs. In other words, if they felt that they wanted to do that, they could do it. There's nothing that their faith tells them that they can't do that. It appears to be only in giving an account of that to the state, to this public school system, that they claim violates their religious beliefs. But it doesn't get any more concrete than that. Let me take one last run at this. I may have to wait and have Mr. Ferris explain to me in rebuttal to make sure I've understood this correctly. But I don't understand the argument to have to do with, you know, I don't like to log or anything like that necessarily. It is, at least in this discussion today, on the fact that some government official gets to look at the documents and say, I like that or I don't like that. As a matter of education, it's good enough or it's not good enough. That that all by itself is enough to constitute a substantial burden on religion and put the state to the burden of strict scrutiny. Irrespective of a felony. Right.  What's your response to the legal argument there that that all by itself is a substantial burden and then puts the state to the burden of living up to strict scrutiny? Well, I think, first of all, that I go back to what Judge Schwab, how he evaluated the nature of the religious claims in his opinion and that what they actually express is a generalized religious hostility or opposition to having any accountability to the public school system for the home education programs that they administer. I don't, to address what you're asking as far as does the mere fact that they must give some account to the state trigger a state interest burden on the state. I don't believe that that's, well, I don't agree that that's sufficient. Tell us why. That's the point. Assume the premise of his argument that there's some level of discretion and then explain why that isn't a substantial burden as they assert it is. In the first instance, I'd say, you know, you have to look at this question really under the two separate issues that they have. One would be under the free exercise claims and then the other is under the statutory Pennsylvania claim, the RFPA claim. Do you assert there's a difference because they say they're the same? As far as substantial burden goes, I heard Mr. Ferris say no difference. First, RFPA tracks a federal constitutional person under law. We would rely on the free exercise claim and say that the fact of the matter is what's required by the statute is facial neutral and of general applicability. And unlike what this court decided in the Blackhawk case, there is no statutory scheme in Act 169 that creates exemptions from compliance with the record-keeping requirements of the homeschool statute for non-religious reasons. The problem in the Blackhawk case was that you had a statutory scheme that had some exemptions that weren't religious-based but then no provision for recognizing that it had a religious exemption. Act 169 has no exemptions. The school district must apply the law as it's written and can't make any special case arrangements for anyone else. And since there isn't that systematic, because that ability to discriminate is not built into the system in Act 169, I don't think you don't have the compelling state interest test applied as it was applied in the Blackhawk case where you actually had a systematic discriminatory scheme in the statute. And again, if you go by the general rule of Smith, then they don't get to force us to have to show a compelling state interest. We don't reach that level and we can rely on Smith's general holding about it. Does that ignore Yoder? Does that ignore what they say is the deliberate effort by the Supreme Court to salvage a piece of Yoder with the hybrid rights analysis? Well, with hybrid rights, I don't think so, because I think what you have to do with, and this is, I think, problematic in the hybrid rights theory. As you're aware, in our group, we've argued that the court, this court hasn't yet adopted it, although we've indicated it didn't recognize the theory. In Salvation Army, it looks like we accept it. And so it's been recognized in a couple of cases, including Tenafly and including Blackhawk. It hasn't been applied in any case. It was recognized in Tenafly. I'm not sure it was. I didn't have to deal with it there. In Tenafly, you had a free exercise claim and you also had a free speech claim. And what you did was you said you would analyze them separately and you applied the standard that would go with each claim independently. So you looked at the free exercise claim, found assistance, and found that there was actual discrimination there. And so you said, you understand, this neutral ordinance is going to be shut down. But you denied, actually denied the free speech claim because it didn't meet the standards under the First Amendment for that. I actually think that if the court were to take, actually develop a hybrid rights standard, that that's the correct standard to apply, that you want to have to show on the combined claim that, and I think one of the standards that the district court below used and Judge Schiller in the Green case said, is that there be a colorable claim on the separate, non-free exercise aspect of the constitutional issue that's raised. So in this case, it would be the substantive due process right of parents to direct the education of their children. You'd have to show a colorable claim in that. And I believe that an even better analysis of how you handle this problem is provided in the Swenson case, in the Governing County School District case, which is that there ought to be a showing by the plaintiff that not just of a generalized right to educate your children, 14th Amendment claim, but that you ought to be clear and precise about it, and that it ought to tie into a right that's been clearly established and recognized by prior court decisions. And if you use that kind of standard, well, it certainly did not go nearly as far as what the families in this case are asking. Why not explain that? Give us a distinction between this case and the Hogan and Yoder. Because Yoder recognized the right of the states to have reasonable regulation of certain fundamental standards in education, and at the elementary school level, there seemed to be recognition in Yoder that that goes pretty far. The actual families in Yoder were talking about children who were at the secondary school level and families that were seeking religious exemption. Do you think they're separated enough generally if they have been educated from school and elementary school? I think so, because I actually think in this court it's recognized that the degree to which the state has an obligation to ensure basic levels of education, basic educational standards, is more prominent at the elementary school level, at the elementary education level, even though it is in the secondary school level, because that's where you're forming your basic knowledge and core subjectivities that you need to have to be a functional citizen in this commonwealth. So, again, what they're asking for goes far beyond what Yoder ever suggested, I think, which is the recognition that parental right would even trump reasonable regulations of elementary education. What they're asking for, what do you understand them to be asking for? I believe that they had asked that Act 169 be struck down in its entirety. I don't know that they've ever parched out that only specific portions of Act 169 could be held to be unconstitutional. And I think, fundamentally, one of the amicus briefs in this case is filed by the Jewish Social Policy Action Network. I think they make a good point that there seems to be no level of oversight that the state would be able to say, you struck Act 169 and you adopted some other scheme. Well, you're still going to have the same problems with their, as I understand the point of this expression, the religious beliefs, in any scheme that would require some oversight by the state or some accountability to the state of what's going on educationally. Well, I gather Mr. Ferris is saying that you're happy with some sort of objective test. The question is, what is an objective test? Is there such a thing as an objective test? I'm not sure where the religious reasons come from that. I mean, if you're going to say that you have a specific religious belief that makes it objectionable that you have to give accountability to the state, then whether the state uses some other system for evaluating that performance versus the one that we have in Pennsylvania, from what I understand of the plaintiff's religious objections, I don't see how that ever solves their problem. When you say their problem, on this appeal, I take their problem to be we never got past substantial burden. Not that we'll never be regulated by the state. On the contrary, whether the individual parents here feel that way or not, the position being taken by their advocate in this courtroom is we concede a state interest in religion. We concede the regulatory interest will put the state into the education business with our kids. That's a given. The only question is, is this statute on its face such that it vests a level of discretion in state actors that ought to require the state to show they're doing their regulatory stuff in the least restrictive way? As you get there, they filed a claim in state court, right? You removed? Two of the districts removed, and then, by agreement, we all had the cases vacated. Their argument, it seems to be, in some measure, that they haven't gotten past substantial burdens because under the RFPA, one of the elements that we've talked about, and you even mentioned that they have a tenet of their religion, and then you corrected yourself, but one of the elements is that the actions of the state compels conduct or expression which violates a specific tenet of a person's religious faith. That's one of the tests under the RFPA for substantial burden. That's correct. Don't the families believe as a tenet of their religion that they should not report to the state the progress of their children's education? Well, I think on that issue, we have a question of the sincerity of the religious beliefs. The point being that they've made that allegation. They've made that allegation in the claiming that they have a religious belief that opposes accountability to the state for their children's education. And the homeschooling law does require that reporting, which, in effect, is a counterclaim. They have to report, yes. And so then? But also, Judge, remember, it's not just the tenet. I mean, this may be getting a portion of these words a bit too carefully, but it has to be shown specific tenet. And that specificity requirement in the RFPA is, and I disagree with Mr. Ferris as to what he said about this, but that's actually different than what the president has shown. Did we ever get that? Did the judge ever make a finding that there was conduct that was compelled, which violates a specific tenet or does not violate a specific tenet of their religious faith? Judge Fraud believed, as he read their complaint, that they had not made the threshold showing that he interpreted them to have to do under the RFPA of proving that they were compelled to violate a specific tenet. That anything in Act 169 compelled them to violate a specific tenet of their beliefs. They only had to generalize. Did he make that actual finding? I think his opinion discusses at different times a concrete, specific, but they're not required to violate as concrete or specific religious belief. He said they have a generalized religious objection. He does cite the correct statute. He does cite this number four. Most of his discussion jumps off of that point. That's my concern. Where does he make the finding or conclusion that this particular test, under substantially burdens, was or was not met? Because I believe Judge Fraud concluded that even based on the complaint allegations and on the deposition transcripts that were provided at the summer judgment stage. Do you or your co-counsel or somebody, can you point me to where it is in the opinion that actually he makes that determination? I'm not finding it. I think it's in the passage where he talks about that they don't have a religious objection. They have a general philosophical objection to having to comply with the Act 169. So you're saying influentially that means that because they have a general philosophical objection that that means that there is not a specific tenet of their religion? You've got to make a couple of jumps to get there. Well, I think that in order to dispose of the claim in the way that he did, you have to make that connection. That he analyzed the language, what he actually purported to do, through the whole citation of the Pennsylvania Statute of Reconstruction, to try to determine what actually is meant. Because there's no further definition in the statute itself of what substantially burdened means other than what is meant for by compelled conduct that violates a specific tenet. Compelled conduct or expression that violates a specific tenet. I think that you have to connect that inferentially to support what he did. What page are you looking to to make those inferential connections? Judge, I don't have the page at hand. Again, I think it's under later in the opinion after he discusses the statutory construction. Yeah, I saw it on page 762. It was the substantial burden identified by plaintiffs. But, and there's other places. I'm having trouble finding it. I'm not saying it doesn't exist, but you've got to touch the bases, don't you? Well, Judge Wallach said, I believe he did. Well, assuming he said what you think he said, is the distinction he makes between a philosophical problem and a religious problem one that's just too fine a distinction for a court to make? At what point does a philosophy become a religious belief? Well, I think it is a part that sometimes does have to be made because of the protection that religious beliefs get specifically under the free exercise clause and protections that philosophical beliefs may or may not get but under a separate constitutional provision under the free speech clause. Isn't that, doesn't that put us in the very zone that we ought to be running screaming away from, like making distinctions between whether something is really religious or not? That inquiry is one that is occasionally engaged in. I mean, in cases where the Supreme Court case that decided whether or not the Amish claim that they shouldn't have to pay Social Security, tag-wiles, compelling state interest case, but certainly cases where you do want to claim tax exemptions, you know, it's really what I'm thinking of, on a religious ground, but there's, you know, you do actually look into whether or not the activity or the conduct or the nature of the beliefs are religious in nature as opposed to something else. So it's an inquiry that occasionally does have to be engaged in in order to ascertain a true and correct religious claim as distinguished from something else. And I would also note that even though Judge Roth procedurally decided the case on a sovereign judgment motion, there are certainly discussions in his opinion of how he believes, if he had to decide on a case on the compelling state interest grounds, that the overwhelming majority of the circuits that have looked at similar types of problems have held that enforcement of the compulsory education laws in Pennsylvania in fact serve compelling state interest. Can I ask one more question? I have one last thing to ask Mr. Farris. I want to ask you, too. If this matter went back, is there a record upon which the judge could properly make a determination about compelling state interest, or is there more of a record that would have to be developed? If the case were sent back, there is no expert reports. There is testimony from some of the school superintendents who were deposed about what interests they believe are being served by having to enforce the compelling state interest. Having to enforce or comply with Act 169, that would be the only record so far created on that, but it certainly wasn't something that we, based on the procedural basis of the decision, we didn't argue that in our sovereign judgment motion. Mr. Lally, thank you very much. Mr. Farris? Thank you, Your Honor. May it please the Court. Counsel from the school district said that subjectivity is inherent in any educational process. It is not inherent in any process where the government reviews and makes sure that the compelling interest in literacy and self-sufficiency is taken care of. Pennsylvania's own law on all other forms of private education is entirely objective. You don't have to have subjectivity when you're the regulator. Help me with that. How do you move into the entirely objective when you're asking somebody to decide whether or not somebody has written an essay and has done it in a way that demonstrates English literacy? How is that done with perfect objectivity? If you ask them to do that, whether it's graded pass, fail, or A, B, C, or D, it's still subjective. What he's asking to do is to have the discretion to make a pass, fail judgment. We're saying that's the job of education, not the job of government regulators. Government regulators need to find a way to do this in an objective fashion.  That's precisely the point, Mr. Farris, that I think Mr. Lally was making, which is this is an endlessly recursive exercise that you're inviting the Court to enter because if you attempt to find some level of objectivity which is more objective than this, it will still have subjectivity in it, which would lead your clients or some folks like them, that is, who have a philosophical or religious problem with the state looking at their education to say, no, you've still got discretion. I still have a problem. You go back, you do it again. You go back, you do it again. As a practical matter, where's the end of that loop? Well, Your Honor, as a practical matter, you can look at the appellate litigation because I've done most of it on homeschooling for the last 25 years. Where states adopt objective standards, the strike is over. It's when the state demands approval and the right to subjective determination, that's where the strike remains. Is there stuff in the record that you can direct us to  between what's truly objective, quote-unquote, and what is unconstitutionally subjective? I would direct you to page 13 and 14 of the brief filed by the school districts because they go through the Hankins family's beliefs and they ask them, do you have an objection to making a law? No. Do you have an objection to having the independent evaluator? No. Do you have an objection to this other complaint? No. The brief concluding objection is to what? It's to turn all of that over for discretionary review. If the Pennsylvania statute said, we must administer a test, by the way, it's in grade 3-5-8, we must administer a test in the second year and the cut score, the required score, as the New York regulations... And the problem of turning it over to find out... It's turning it down for approval. It's not a filing requirement they're objecting to. It's the approval requirement they're objecting to. If it was merely saying, turn the material in and someone makes a ministerial judgment that you comply with all the components of the statute, that is a different statute, that is a different case. How could it ever be ministerial, Mr. Farris? How could it ever be ministerial? I mean, even if you say, well, we'll have standardized tests, could the objection be raised that the choice of the questions, the way they're framed, the selections given in the multiple choice all bear on ideas or philosophies or decisions, and that at any level... I mean, aren't you inviting us to chase a real chimera, that there's just no such thing as perfect objectivity in an educational evaluation process? Your Honor, I would just simply say that the Supreme Court of the United States mandates that chase. Campbell v. Connecticut says that the line in free exercise is ministerial versus discretionary. That is the line. That is the constitutional line of dimension, and we have a duty to try to pursue it. Now, the plain facts, the real-life facts are virtually every state has figured out how to do this, and litigation has died down, and the states that have adopted... Basically, if you take the Act 169 components but for the last step... Well, that puts me on a real... May I? Yes. Where in the record can we find something that would give us... Assuming we felt, yeah, you know, something ought to be different here, just for the sake of discussion, where in the record would we see, hey, this would be, quote, constitutionally objective, unquote, and not constitutionally subjective and therefore bad, unquote, in the way you're laying it out for us? When you make that distinction and say, everybody else has figured it out, Pennsylvania hasn't, where can we look in the record to see, that's good, that's bad? Well, Your Honor, I hope you ask what you do. Or you think that's the best bet. I can't... Well, I can't do this. I can't speak for these particular religious claimants as to whether they would accept the Virginia law, whether they would accept the Ohio law, whether they would accept the Latino law. Well, Your Honor, the question, the proper question is, do they have any bona fide religious objections to this law? And all these other kinds of comparisons really do necessitate analysis of the compelling governmental interest, because the question you're posing, Judge Jordan, is this. Can the state really achieve its objectives through a less restrictive alternative? Because if these people have such bizarre objections that they don't accept anything ever, we can't ever satisfy these people, that's a less restrictive means statement. No, there's nothing that will satisfy these people. Is it, or is it really a question, going back to your very first point, which is this is a substantial burden? Because your argument seems to be any level of discretion, period, any level of discretion constitutes a substantial burden by virtue of previous Supreme Court authority which compels you to recognize that any level of discretion equals substantial burden. Your Honor, that's almost correct, but let me, if I can just rephrase that. I thought that's what you said. Well, it's very close. Any level of discretion triggers strict scrutiny. Well, they don't trigger strict scrutiny unless there's substantial burden, right? You can't bypass that. The substantial burden is this. They are compelled, just as in the statutory analysis, they are compelled, and I didn't take the quote from the Bible or read them, they are compelled to render unto Caesar the things that are God's. That is, they're asking the government for approval. This is like the Wisner case, the Wisner case or the Ohio case, where the religious schools there say we cannot seek the government's approval of our cases. Establishment clause cases would suggest that giving the government's approval is a problem. And that it's the discretionary approval authority that compels the religious objection. And if I can deliberately compare it to the first case you all heard this morning, when you're talking about what is this floodgates problem that we're talking about? Are we going to assume that all employers are really going to steal the other half of the Social Security from people, or is that going to be a pretty narrow thing? I don't think you can deal with floodgates on homeschoolers either. Presumably it's allowed. No, we're not going to make the room. That's not relevant to the issues that we have here. And you've already noticed that. Any other questions? The case was very well argued by both sides. The briefs were excellent as well. We would like a transcript made of the proceedings. And for both sides, it's a share in the cost of the transcript. And check with the clerk's office. Thank you again. Take the case under advisement. Thank you.